# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

UNITED STATES OF AMERICA,     )
                                       )

         Plaintiff,          )

                                       )

v.                                )     No.:   3:06-CR-110
                                     )              (VARLAN/GUYTON)

LATAWYNE D. OSBORNE,       )

                                       )

        Defendant.       )

## MEMORANDUM AND ORDER

This criminal matter is presently before the Court on defendant's pro se Motion to Withdraw From Plea Due to Ineffective Assistance of Counsel [Doc. 70] and defendant's Motion to Withdraw Guilty Plea [Doc. 82]. The government has responded in opposition to each motion [Docs. 71 and 85, respectively]. The Court held a hearing on these motions on May 6, 2008 during which it heard oral argument and testimony from witnesses. At the conclusion of the hearing, the Court stated that it would take the motions under advisement. After careful consideration of the motions, responsive documents, testimony, exhibits, oral arguments of the parties, and the relevant law, defendant's motion to withdraw guilty plea [Doc. 82] will be granted and the Court will consider defendant's guilty plea withdrawn.[1]

---

[1] The Court notes that defendant's pro se Motion to Withdraw From Plea Due to Ineffective Assistance of Counsel [Doc. 70] was filed in violation of Local Rule 83.4(c) which states in relevant part, "Whenever a party has appeared by attorney, that party may not thereafter appear or act in his or her own behalf in the action or proceeding." Additionally, in light of the Court's decision to grant defendant's Motion to Withdraw Guilty Plea [Doc. 82] filed on defendant's behalf by his counsel, defendant's pro se motion is moot. Accordingly, defendant's pro se Motion to Withdraw From Plea Due to Ineffective Assistance of Counsel [Doc. 70] will be denied.

## I.     Relevant Facts

On August 15, 2006, the grand jury returned an indictment [Doc. 1] against defendant, charging him with (1) possessing with the intent to distribute five grams or more of cocaine base within 1,000 feet of a public elementary school; (2) possessing with the intent to distribute cocaine hydrochloride within 1,000 feet of a public elementary school; and (3) possessing firearms in furtherance of these drug trafficking offenses.  The grand jury returned a superseding indictment [Doc. 54] on August 23, 2007 changing only the penalty statute listed in Count One of the original indictment.

After substantial pretrial litigation concerning various suppression issues, on September 4, 2007, defendant pled guilty to all three counts charged in the superseding indictment in accordance with a written plea agreement [*see* Docs. 56, 57].  By signing the plea agreement, defendant agreed to the following factual basis:

> On July 29, 2006, Knoxville Police Department Officers were responding to a "shots fired" call at 1726 Moses Ave, Knoxville, Tennessee. Officers were advised that the suspect was driving a gold Impala and had fired shots into another vehicle.  Upon arriving at 1726 Moses Ave., the officers saw the defendant operating a gold Impala and pulling into the driveway at 1726 Moses Ave.
>
> The officers detained the defendant and a check of his name revealed an outstanding felony warrant for his arrest.  The defendant was searched and 29.1 grams of cocaine base and $542.00 U.S. currency were found on his person.
>
> A search of the vehicle revealed 136.7 grams of cocaine hydrochloride and two (2) loaded firearms, a Taurus .45 caliber semi-automatic pistol and an Astra H-100 9mm semi-automatic pistol.

The defendant gave a written statement admitting: that he was a drug dealer; and that the firearms were for his protection.

On July 29, 2006, when he was arrested at 1726 Moses Avenue, Knoxville, Tennessee, the defendant possessed with intent to distribute 29.1 grams of cocaine base, also known as "crack," and further the defendant possessed with intent to distribute 136.7 grams of cocaine hydrochloride, on and within 1,000 feet of the real property comprising Maynard Elementary School, a public elementary school.

[Doc. 57.]

Before accepting the guilty plea, the Court engaged in a colloquy with defendant in accordance with Federal Rule of Criminal Procedure 11 in an attempt to insure that he was knowingly and voluntarily pleading guilty. When asked if he agreed with the government's summary of what he did, defendant indicated that he had the drugs in his possession within 1,000 feet of a school, and that he possessed the drugs for sale, but that there was no drug transaction going on at the time and he did not intend to distribute the drugs within 1,000 feet of the school. [Change of Plea Hr'g Tr. 41-52, Sept. 4, 2007.] After the Assistant U.S. Attorney agreed that the government was not intending to prove that defendant planned to distribute the drugs within 1,000 feet of a school, defendant indicated that he agreed with the government's summary. [*Id.* at 51-52.] Defendant further agreed that he was satisfied with the advice of his counsel; that no person put any mental or physical pressure on him to plead guilty; that he was offering to plead guilty because he was in fact guilty; that he understood that his sentence would be determined in conformity with the Sentencing Guidelines; and that he would not be permitted to withdraw his plea on the basis of the sentence he might receive.

Based upon defendant's given responses at the change of plea hearing, the Court found that defendant plead guilty knowingly and voluntarily. Accordingly, the Court adjudged him guilty of Court One: possessing with the intent to distribute five grams or more of cocaine base within 1,000 feet of a public elementary school which carries a mandatory minimum of five years up to 80 years' imprisonment, a $4,000,000 fine, a term of supervised release of eight years to life, and a mandatory assessment of $100; Count Two: possessing with the intent to distribute cocaine hydrochloride within 1,000 feet of a public elementary school which carries a maximum of 40 years' imprisonment, a $ 2,000,000 fine, a term of supervised release of six years to life, and a mandatory assessment of $100; and Count 3: possessing firearms in furtherance of a drug trafficking crime which carries a mandatory minimum of five years to life imprisonment, a $ 250,000 fine, a term of supervised release of up to five years, and a mandatory assessment of $100.

Prior to and at the time defendant entered his guilty plea, he was represented by attorney A. Phillip Lomonaco. Defendant filed a pro se Motion for Review of Counsel that was dated November 27, 2007 but not received by the Court until December 3, 2007. [Doc. 62]. In this letter, defendant states that Mr. Lomonaco told him, "If I want someone to file motions and waste time I need to find a new lawyer." [*Id.*] On December 14, 2007, the Court granted defendant's motion and substituted attorney Kim Tollison for Lomonaco. [Docs. 64; 65.] On December 28, 2007, Mr. Tollison filed a motion to withdraw as attorney of record due to a conflict of interest. [Doc. 66.] On January 3, 2008, the Court granted the motion and substituted attorney R. Alexander Brown for Tollison. [Docs. 67; 68.] On

February 20, 2008, defendant filed a pro se motion to appoint new counsel [Doc. 75], which Mr. Brown followed with his own motion to withdraw as counsel [Doc. 76]. The Court granted these motions and substituted attorney Boyd Venable for Brown on March 12, 2008 [Docs. 79; 80].

Sometime prior to December 7, 2007, defendant requested that Mr. Lomonaco file a motion to withdraw his plea. [Doc. 83, *see also* Letter from Lomonaco to Defendant, dated December 7, 2007, Mot. Hr'g, Def. Ex. 1, May, 6, 2008 (discussing difficulty of winning a motion to withdraw plea, thus demonstrating that defendant raised the issue with Mr. Lomonaco prior to December 7, 2007).] Mr. Lomonaco testified that defendant may have made this request as early as two weeks after he entered his guilty plea. Mr. Lomonaco did not file a motion to withdraw. Defendant also requested that Mr. Brown file a motion to withdraw, but Mr. Brown also failed to do so. [Doc. 83.] On January 15, 2008, defendant filed a pro se motion to withdraw the guilty plea [Doc. 70], and on March 27, 2008, defendant's newly appointed counsel, Mr. Venable, filed a motion to withdraw plea on behalf of defendant [Doc. 82].

## II.     Analysis

### A.     Standard for Withdrawal of Guilty Plea under Federal Rule of Criminal Procedure 11(d)(2)(B)

"A defendant does not have an absolute right to withdraw a guilty plea." *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (citations omitted). Federal Rule of Criminal Procedure 11(d) provides the standard for withdrawal of a guilty plea:

A defendant may withdraw a plea of guilty or nolo contendere:

(1)     before the court accepts the plea, for any reason or no reason; or

(2)     after the court accepts the plea, but before it imposes sentence if:

    (A)     the court rejects a plea agreement under Rule 11(c)(5); or

    (B)     the defendant can show a fair and just reason for requesting the withdrawal.

In this case, the Court has already accepted defendant's guilty plea and the plea agreement is not a Rule 11(c)(5) agreement; therefore, the defendant must show a "fair and just reason" in order to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). This rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991), *cert. denied*, 502 U.S. 1117 (1992) (citation omitted).

The defendant carries the burden of proving that withdrawal of his guilty plea is justified, and the matter is left to the discretion of the district court. *Id.* at 1003 (citation omitted). In *United States v. Bashara*, the Sixth Circuit gave a non-exclusive list of factors which should guide a district court in determining whether to allow a defendant to the withdraw his guilty plea: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained

his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has prior criminal experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. 27 F.3d 1174, 1181 (6th Cir. 1994), *cert. denied*, 514 U.S. 1033 (1995), *superseded by statute on other grounds*, U.S.S.G. § 3B1.1 (cited and applied in *Ellis*, 470 F.3d at 281; *see also United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004)). The first six factors are used to determine whether defendant has presented a fair and just reason for withdrawal and the Court balances that with the last factor–any prejudice to the government. *Alexander*, 948 F.3d at 1004. Although the *Bashara* and *Alexander* courts were operating under the then controlling Federal Rule of Criminal Procedure 32(e),[2] the same factors and rationale are still applicable to the analysis of withdrawing a guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). *See, e.g.*, *Ellis*, 470 F.3d 275, 281; *Valdez*, 362 F.3d at 912.

## B.      Application of the *Bashara* Factors to Defendant's Motion

The Court will analyze each of the factors set forth in *Bashara* to determine whether defendant has demonstrated a fair and just reason for withdrawal of his guilty plea as

---

[2]The rule for withdrawal of a guilty plea was formerly codified as Federal Rule of Criminal Procedure 32(e), which provided that a district court could permit a defendant to withdraw a guilty plea before sentencing if the defendant showed "any fair and just reason." *See* Fed. R. Crim. P. 32(e) (West 2001). This rule applied regardless of whether the court had accepted the guilty plea. *United States v. Mader*, 251 F.3d 1099, 1104 (6th Cir. 2001), *cert. denied*, 535 U.S. 1058 (2002).

required by Federal Rule of Criminal Procedure 11(d)(2)(B) and whether withdrawal is warranted after balancing any fair and just reason and any prejudice to the government.

### 1.    The amount of time that elapsed between the plea and the motion to withdraw it

The first factor is the amount of time that elapsed between the plea and the motion to withdraw it. Defendant pleaded guilty on September 4, 2007 and filed his pro se motion to withdraw his guilty plea on January 15, 2008–133 days from entry of his guilty plea. The Sixth Circuit has denied motions to withdraw guilty pleas on the basis of delays far shorter than the delay at issue. *See e.g.*, *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir.) (77 day delay); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996), *cert. denied*, 510 U.S. 973 (1996) (67 day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35 day delay). Specifically, the Sixth Circuit has held that an "unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw." *Valdez,* 362 F.3d at 912. Therefore, absent the Court's determination that this delay was justified, this factor weighs against withdrawal.

### 2.    The presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings

The next factor for the Court to consider is whether any delay in defendant's filing of a motion to withdraw his guilty plea is justified. Despite the delay before defendant filed his pro se motion with the Court, defendant argues that he attempted to withdraw his plea promptly. [*See* Doc. 85.] At the hearing, defendant introduced a letter from Mr. Lomonaco to defendant dated December 5, 2007. In this letter, Lomonaco notes, "As I have stated

before, a motion to withdraw your plea is almost impossible to win . . . ," indicating that defendant asked Lomonaco to file a motion to withdraw plea on his behalf at some point prior to December 5, 2007. [Letter from Lomonaco to Defendant, dated December 7, 2007, Mot. Hr'g, Def. Ex. 1, May, 6, 2008 .]  Additionally, defendant's Motion for Review of Counsel, dated November 27, 2007 and entered on December 3, 2007, suggests that he requested that Lomonaco file some sort of motion at a prior time.  [Doc. 62.] On the witness stand, Lomonaco stated that, though he could not remember a precise date, defendant may have requested that Lomonaco file a motion to withdraw the plea as early as two weeks after the plea was entered.

Due to the short passage of time between the entering of the plea and when defendant first notified Mr. Lomonaco that he wished to withdraw it, it is likely that defendant immediately requested that a motion be filed as soon as he felt that there were grounds for it.  Defendant persisted in his effort to get a motion filed as he also requested that Mr. Brown file a motion to withdraw the plea, and after Mr. Brown failed to do so, defendant filed his pro se motion.  Due to defendant's early attempt to withdraw his plea and his persistence in getting a motion requesting such relief filed, the Court does not find that an unreasonable amount of time elapsed between the entering of the plea and the filing of the motion to withdraw it, and this factor weighs in favor of withdrawal.

### 3. Whether the defendant has asserted or maintained his innocence

The third factor is whether the defendant has asserted or maintained his innocence. Courts have taken into account the absence of a defendant's vigorous and repeated

protestations of innocence.  *Alexander*, 948 F.2d at 1004 (citing *United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977)).

At the change of plea hearing on September 4, 2007, defendant asserted that while he possessed to cocaine base within 1,000 feet of a public elementary school and had the intent to distribute the cocaine base, he did not intend to distribute the cocaine base within 1,000 feet of the school.  Despite some confusion over whether the intent to distribute within a school zone[3] was a necessary element, defendant agreed that he was pleading guilty because he was in fact guilty and entered a guilty plea which the Court accepted as being voluntary.

Location near a school is only relevant to the penalty enhancement pursuant to 21 U.S.C. § 860(a) and not the substantive crimes with which defendant is charged.  Additionally, the penalty enhancement only requires that the defendant possess drugs within 1,000 feet of a school and have the intent to distribute those drugs either near the school or elsewhere, the defendant does not have to have the intent to distribute the drugs within 1,000 feet of the school.  *See, e.g.*, *United States v. Rodriguez*, 961 F.2d 1089, 1091-92 (3d Cir. 1993) (citing *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991) ("[T]he schoolyard provision applies to a defendant who possesses drugs within 1000 feet of a school even if he or she intends to distribute them elsewhere.").  Defendant agreed with the factual basis including the facts that he possessed the drugs within 1,000 feet of a school and that he intended to sell the drugs that he possessed.  When a defendant agrees with a factual basis

---

[3]As it is used in this opinion, "school zone" refers to the area within 1,000 feet of a school.

10

that supports a conviction, his statement to the Court that he is not guilty is not "the 'vigorous and repeated protestations of innocence' that would support a motion to withdraw a guilty plea." *United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (quoting *Baez*, 87 F.3d at 809). Additionally, a denial of the aggravating circumstances which are relevant to sentencing and not guilt does not constitute an assertion of innocence. *United States v. Pluta*, 144 F.3d 968, 974 (6th Cir. 1998). Accordingly, the Court does not consider defendant's assertion that he did not intend to distribute the drugs within the school zone to be an assertion of his innocence. As such, this factor weighs against withdrawal. However, as discussed below, defendant's apparent confusion is one of the circumstances underlying his guilty plea considered by the Court.

### 4. The circumstances underlying the entry of the guilty plea

The circumstances underlying the entry of the guilty plea comprise the next factor which the Court must consider. Defendant argues that he should be permitted to withdraw his guilty plea because his counsel gave misleading advice about the potential effect the plea would have on sentencing, counsel failed to investigate the sufficiency of the evidence, and defendant did not voluntarily and intelligently enter into the plea.[4]

A guilty plea is invalid if it is not entered knowingly, voluntarily, and intelligently by the defendant. *United States v. Dixon*, 479 F.3d at 435 (citing *Brady v. United States*, 397

---

[4]Defendant also argues that the facts and elements of the case were not recited in Court at the change of plea hearing. Defendant based this argument on his recollection of the plea hearing before he was able to obtain a transcript from that hearing. Upon review of the transcript, the Court notes that the government did recite the facts and elements of the case, and accordingly, defendant's argument to the contrary has no merit. [*See* Change of Plea Hr'g Tr. 37-39.]

U.S. 742, 748 (1970). "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. McCreary-Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (citations omitted). For a guilty plea to be valid, the district court must make sure that the defendant understands "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).

Misadvice of counsel may be a sufficient basis for permitting the withdrawal of a guilty plea. *See Brown v. Perini*, 718 F.2d 784, 789 (6th Cir. 1983). "'[A]ffirmative misstatements of the maximum possible sentence' are sufficient to invalidate a guilty plea if the misstatements are material to defendant's decision to plead guilty." *United States v. Dixon*, 479 F.3d at 435 (quoting *Pitts v. United States*, 763 F.2d 197, 201 (6th Cir. 1985)); *see also Pitts*, 763 F.2d at 201 (reciting numerous cases finding that withdrawal of defendant's plea was appropriate in light of counsel's misadvice concerning sentence exposure, both when counsel overstated and understated defendant's possible sentence).

Defendant asserts that "his prior counsel did not properly explain the ramifications of the plea agreement, did not adequately explain all of the various options available to him, and did not insure that the Defendant thoroughly understood the plea agreement or the consequences of entering into the agreement with the government." [Doc. 83, at 3.] Defendant also states that his attorney did not advise him that there would be a two-level increase in his sentencing guideline range due to the allegation that he possessed with intent to distribute drugs within 1,000 feet of a school. Finally defendant states that his attorney

12

informed him that a cooperation agreement in which the government would recommend a downward departure in exchange for information was included in the plea agreement, however, it was not.

The Court heard the testimony of Mr. Lomonaco and defendant Osborne at the hearing on this motion. Mr. Lomonaco was unable to remember all of the specific details of his representation of this defendant, but he was able to recount the procedure he regularly follows in representing criminal defendants in federal court. Mr. Lomonaco stated that he generally tries to explore all possibilities with a defendant but if it looks like a defendant may not prevail at trial, he discusses the option of pleading guilty to get a reduction in defendant's guideline range. Usually when he meets with a defendant regarding a plea, Mr. Lomonaco brings the Sentencing Guidelines Manual and goes over the plea agreement with his client. Mr. Lomonaco admits that he discussed the possibility of a downward departure for cooperation with defendant Osborne but that there is no mention of cooperation in the agreement. However, Mr. Lomonaco stated that he does not believe it is mandatory for the cooperation agreement to be in the plea agreement in order for defendant to receive a departure on that basis.[5]

In regard to Counts 1 and 2 of the First Superseding Indictment, defendant states that he did not know that two points would be added to his offense level for possession within a

---

[5]Mr. Lomonaco also noted that he does not continue represent a client if the client decides to cooperate. He reported that he does not tell his clients not to cooperate, but his retainer includes a provision that states he is permitted to terminate the representation if a client decides to cooperate or to seek substantial assistance. There has been no suggestion that this provision became an issue in regard to defendant Osborne.

school zone. Mr. Lomonaco was not sure whether he discussed with defendant the possibility of a two point increase for being within 1,000 feet of a school. Mr. Lomonaco did state that he was surprised to learn that there was no scienter element in the statute. In fact, at the change of plea hearing Mr. Lomonaco stated, "I think Mr. Osborne's concern is one of interpretation of the statute. And to be honest with the Court, Your Honor, we did not discuss that specific intricacy of that interpretation [the lack of a scienter element]." [Change of Plea Hr'g Tr. 47.] Mr. Lomonaco noted that whether defendant had to have the intent to sell within the school zone is a confusing issue. Of particular significance, Mr. Lomonaco is not sure if he told defendant that he could be sentenced to up to 40 years' imprisonment.

At the hearing on the pending motions, defendant also expressed that he previously had some confusion over the meaning and application of the term "furtherance" as charged in Count 3 the indictment. At the change of plea hearing, Mr. Lomonaco reported that he had discussed the legal meaning of the words "carry," "use," and "furtherance" with defendant. [Change of Plea Hr'g Tr. 23.] Count 3 charges the defendant with "knowingly and intentionally possess[ing] firearms, that is, a loaded Taurus .45 caliber pistol and an Astra H-100 9mm pistol in furtherance of drug trafficking crimes . . . ." [Doc. 54.] Defendant states that, at the time of his plea, it was his understanding from what Mr. Lomonaco told him that if the government could prove that he carried the guns during the crime, it could automatically prove that he used them in furtherance of the crime.

Defendant asserts that he has since learned that there must be a nexus between the drug trafficking crime and the guns and the defendant must have possessed the guns to

14

advance or promote the commission of the underlying offense. [See Doc. 70 (citing *United States v. Timmons*, 283 F.3d 1246, 1252[-53] (11th Cir. 2002)).] Defendant states that he had the guns only for protection because he has been shot before, and accordingly, he disputes the allegation that he used the guns in furtherance of a drug trafficking crime. Defendant further suggests that Mr. Lomonaco did not investigate all of the facts pertaining to this charge and the defendant "would not be in this plea agreement" if Mr. Lomonaco has properly performed his duties. In response to a question about defendant's statement at the change of plea hearing that he was satisfied with his attorney, defendant explained that he was satisfied with the advice of Mr. Lomonaco at the time he made his statement to that effect, but that at that time he did not know the law and now that he does, he is not satisfied.

Another basis defendant asserts for withdrawing his plea is that counsel encouraged him to plead guilty so that he could get the benefit of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, but counsel did not tell him that he could get the same reduction even if he went to trial. Defendant argues that if he "had been properly advised that his sentencing exposure from trial could be indentical [sic] to what he would be exposed to in the plea agreement, It would have been Impractical for him to wave his right and enter into the plea." [Doc. 70.] At the hearing on this motion, Mr. Lomonaco agreed that U.S.S.G. § 3E1.1, comment 2 provides that in rare circumstances a defendant may get a reduction for acceptance of responsibility after going to trial. The comment states:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses

15

remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, cmt. 2. Accordingly, the circumstances in which a defendant could go to trial and still receive an adjustment for acceptance of responsibility are limited. However, defendant suggests that had he known that it is possible to go to trial and still receive a reduction for acceptance of responsibility, he would not have entered a plea. [*See* Doc. 70.]

Considering all of these circumstances, the defendant has cast reasonable doubt as to whether his plea was entered knowingly, voluntarily, and intelligently. Though the Court took precautions at the change of plea hearing to ensure that defendant was entering his plea knowingly, voluntarily, and intelligently, the record now reveals that defendant may not have been aware of the law as it applied to him as he answered the Court's questions. Defendant has not shown that Mr. Lomonaco made affirmative misstatements, but he has shown that he did not completely understand the charges against him as they applied to the facts of his case or his sentence exposure. Because defendant states that he would not have pleaded guilty had he been properly informed of his sentence exposure and what the government would have to prove to meet the "in furtherance" element, his lack of information was

material to his decision to plead guilty. Accordingly, this factor, to the extent that it does not mandate withdrawal, at least weighs strongly in favor of withdrawal.

### 5.    The defendant's nature and background

The next factor for the Court to consider is defendant's nature and background. Defendant's intelligence, sophistication, and understanding of the plea are relevant to the Court's analysis of this factor. *See Ellis*, 470 F.3d at 285 (finding that this factor supported denial of defendant's motion to withdraw plea because defendant was highly educated and sophisticated and understood what he was doing when he enter his plea); *see also United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007).

The record indicates that defendant Osborne's intelligence and ability to understand the proceedings support withdrawal. During the pretrial process in this case, Magistrate Judge H. Bruce Guyton requested that defendant undergo a psychological evaluation to determine defendant's competency to stand trial and sanity at the time of the alleged offenses. Pursuant to Judge Guyton's order, defendant was examined by Mr. Gordon M. Zilberman, Ph.D., a forensic psychologist. The Court has reviewed Dr. Zilberman's sealed report [Doc. 28] and determines that defendant's cognitive, behavioral, and emotional qualities support defendant's assertions that he did not understand the law as it applied to the facts of his case at the time he entered his guilty plea.

The Court notes that though his pro se motion and his testimony at trial, defendant demonstrates some of understanding the law. Additionally, Mr. Lomonaco represented to the Court that defendant would do his own research and make suggestions to Mr. Lomonaco

17

when they met to discuss defendant's case. However, balancing this evidence of understanding with defendant's intelligence level and ability to understand as reported by Dr. Zilberman and defendant's confusion and misunderstanding regarding the law as it applies to his case at the time he entered his plea, the Court finds that this factor weighs in favor of withdrawal.

### 6. The degree to which the defendant has prior experience with the criminal justice system

The Court must next consider defendant's prior experience with the criminal justice system. The Court should determine under this factor whether defendant is "a novice" to or "familiar with" the criminal justice system. *Spencer*, 836 F.2d at 240 (quoting *United States v. Kirkland*, 578 F.2d 170, 171-72 (6th Cir. 1978)). In *United States v. Dixon* and *United States v. Durham*, the Sixth Circuit found that each defendant's one prior state conviction constituted enough experience with the criminal justice system to weigh against withdrawal. *Dixon*, 479 F.3d at 437; *Durham*, 178 F.3d at 799. *But see Ellis*, 470 F.3d at 285 & n.3 (finding that defendant's one state court conviction for a minor offense did not constitute extensive experience with the criminal justice system).

The United States Probation Office reports that on July 3, 2006, defendant pled guilty to simple possession in General Sessions Court in Knoxville, Tennessee. Defendant has no other criminal convictions; however, defendant has pending charges in the Superior Court of Bartow County, Georgia, Docket Number 07-758. These pending charges are for two violations of the Georgia Controlled Substances Act, possession of a firearm during the

commission of a crime, and a window tint violation. Defendant also was arrested on three different dates, but the charges related to each of those instances were dismissed.

Here, though defendant's experience with the criminal justice system may not be vast, the Court finds that defendant is familiar with the criminal justice system, and specifically with entering a plea. Therefore, this factor weighs against withdrawal defendant's plea.

### 7. Potential prejudice to the government if the motion to withdraw is granted

The final *Bashara* factor is the potential prejudice to the government if the motion to withdraw is granted. The Court need not consider this factor unless defendant establishes a fair and just reason for vacating the plea. *United States v. Alexander*, 948 F.2d at 1004. In determining whether defendant has presented a fair and just reason for withdrawal of his plea, as discussed above, the Court has determined that several of the first six *Bashara* factors weigh in favor of withdrawal. Though no one factor is controlling, the Court is particularly persuaded by the fourth factor, the circumstances underlying defendant's guilty plea. It is not clear to the Court that defendant completely understood the elements of the crimes to which he was pleading guilty and their corresponding punishment possibilities. Accordingly, the Court is not convinced that defendant's plea was knowing, voluntary, and intelligent. Accordingly, the Court finds that defendant has presented a fair and just reason for vacating the plea.

Any fair and just reason presented by a defendant must always be balanced against prejudice to the government. *United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003).

Once the Court has found that there is a fair and just reason for defendant to withdraw his guilty plea, the burden is on the government to show prejudice. *Cf. Ellis*, 470 F.3d at 285-85 (noting the government did not need to establish prejudice because defendant did not establish a fair and just reason).

Prejudice to the government can include wasted government resources, which in turn can include potential wasted judicial resources. *See United States v. Carr*, 740 F.2d 339, 345-46 (5th Cir. 1984), *cert. denied* 471 U.S. 1004 (1985); *see also United States v. Murray*, 66 Fed. App'x 600, 605 (6th Cir. 2003) (finding prejudice when defendant's trial was underway before he entered his plea and defendant waited nine weeks to attempt to withdraw his plea); *Lineback*, 330 F.3d at 444 (upholding district court determination of prejudice based upon harm to the victim of defendant's aggravated sexual assault who thought the case was resolved); *Durham*, 178 F.3d at 799 (noting that "forcing the government to prepare its case once again would prejudice the government"). Prejudice can also be shown if key witnesses are no longer available or that the delay resulting from defendant's withdrawn guilty plea harms the witnesses' ability or incentive to testify truthfully and accurately. *Valdez*, 362 F.3d at 913; *United States v. Mise*, 27 Fed. App'x 408, 414 (2001) (finding prejudice to the government when cooperating defendants had already been sentenced and therefore did not have the same incentive to cooperate with the government). However, because the government always has to spend time and money trying a case, the time and expense of trial constitutes prejudice only when the government must spend extra time and

expense preparing for trial as a result of defendant's decision to plead guilty and then withdraw the plea. *See Valdez*, 362 F.3d at 913.

The government did not present any argument that it would be prejudiced by the Court granting defendant's motion to withdrawal. Instead, it argued that defendant had not presented a fair and just reason to withdraw his plea and that therefore the Court need not address this factor.

Even considering the record on its own, the Court does not find that prejudice to the government outweighs defendant's fair and just reason for withdraw. Though pretrial litigation in this case, including litigation of several suppression issues, spanned over a year, the time expended to resolve these issues was not wasted because it was necessary in preparation for trial and these issues do not need to be relitigated should the case proceed to trial. The government has not indicated that it had already begun to prepare this case for trial beyond the pretrial litigation. The Court acknowledges that there has been some delay of the trial in this case due to defendant's guilty plea because, prior to the entry to defendant's guilty plea, this case was scheduled for trial on September 4, 2007. However, there is no evidence to indicate that any evidence or witnesses have become unavailable since the previously scheduled trial date, nor is there any indication that this delay prejudices the government in any other way. There are no codefendants who have already been sentenced and thus have lost their incentive to testify. There are no identifiable victims who will be prejudiced by a trial they though was unnecessary due to defendant's guilty plea. Because the government has not advanced any argument of prejudice and the Court does not find any

prejudice that outweighs defendant's fair and just reason for withdrawal, the Court will grant defendant's motion to withdraw his guilty plea and vacate his guilty plea.

**IV.     Conclusion**

For the reasons stated herein, defendant's Motion to Withdraw Guilty Plea [Doc. 82] is hereby **GRANTED** and defendant's guilty plea is **VACATED**.   Defendant's pro se Motion to Withdraw From Plea Due to Ineffective Assistance of Counsel [Doc. 70] is hereby **DENIED as moot**.   In light of this ruling, this matter is **SCHEDULED** for trial on Wednesday, August 20, 2008 at 9:00 a.m.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE